## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

CRAIG T. GOLDBLATT  
JUDGE

824 N. MARKET STREET  
WILMINGTON, DELAWARE  
(302) 252-3832



February 12, 2025

**VIA CM/ECF**

    Re:   *In re GrooMore, Inc.*, No. 25-10018

Dear Counsel:

    GrooMore, the debtor in this bankruptcy case, is a company that operates a software app for pet groomers.[1] It filed this bankruptcy case on January 9, 2025 under subchapter V of chapter 11. Subchapter V was enacted to facilitate the rehabilitation of small businesses.

    The debtor explained, in a declaration that was filed on the first day of the bankruptcy case, that it was a defendant in a lawsuit pending in the Central District of California, captioned *Moement, Inc. v. Groomore, et al.,* Case No. 2:22-cv-02871 (C.D. Cal.). The plaintiff in that action accuses the debtor of, among other things, trade secret misappropriation and trademark infringement.[2] The lawsuit also names

---

[1] D.I. 5 ¶ 5. Debtor GrooMore, Inc. is referred to as the "debtor" or "GrooMore."

[2] The plaintiff, Moement, Inc., is referred to as "Moement." The complaint in that action is docketed here at D.I. 38-1.

*In re GrooMore Inc.*, No. 25-10018
February 12, 2025
Page 2 of 6

a number of individuals. The complaint seeks both an injunction against future violations as well as damages for alleged past violations.

On the debtor's telling of events, while it denies the claims asserted in the litigation, it concluded that in light of the cost of the litigation, it made more sense to remove the allegedly infringing aspects of its app than to continue litigating. As the debtor's first-day declaration explains, "GrooMore has gone to great lengths to remedy the purported allegations of trade secret misappropriation and copyright infringement by Moement, including, but not limited to, re-coding GrooMore's backend code, changing GrooMore's app and website interface to assure that GrooMore was not using Moement's branding colors or theme styles, and purchasing new licensing/keys to ensure GrooMore has full ownership of the licenses it uses."[3]

The debtor's basic contention is that the actions it has taken have effectively mooted Moement's claims for injunctive relief. The only issue left in the Moement litigation, the debtor argues, is the question of how much (if any) damages it owes on account of its alleged past violations. Accordingly, the debtor asserts that it is entitled to seek to reorganize its business in bankruptcy. On this theory, while Moement's damages claims against it will ultimately need to be liquidated, that is not an urgent matter. Whatever claims Moement may have as a creditor will be paid, after GrooMore confirms a plan of reorganization, in accordance with the Bankruptcy Code's priority scheme and the terms of GrooMore's plan.

---

[3] D.I. 5 ¶ 13.

That story is fine as far as it goes. The problem with it, however, is that Moement disputes the assertion that GrooMore has fixed its app so that it no longer uses Moement's trade secrets and intellectual property (assuming, for this purpose, that it previously did). And that is of critical importance. Chapter 11 is intended to facilitate the reorganization of a business that is otherwise a sensible one but is saddled with the problem of too much debt. On a post-petition basis, a debtor is required to conduct its business in compliance with applicable state and federal law.[4] And as much as the automatic stay in bankruptcy is intended to offer a debtor a breathing spell from the cost of litigation, it does not mean that a debtor can operate its business on a post-petition basis without having to face litigation (whether filed before or after the bankruptcy filing) alleging that the debtor's post-petition operations are unlawful. Dealing with that kind of claim is simply a cost of doing business that must be borne even by a company in chapter 11.

Moement moved for relief from stay for the purpose of continuing its lawsuit in the Central District of California.[5] It points out that the bankruptcy case was filed on the eve of trial and suggests that the bankruptcy filing is an improper effort to

---

[4] *See In re Cracked Egg, LLC*, 624 B.R. 84, 88 (Bankr. W.D. Pa. 2021) ("The mere fact that a debtor has filed for bankruptcy protection does not obviate the requirement that a debtor abide by applicable law."); 28 U.S.C. § 959(b) ("a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.").

[5] D.I. 37.

obtain strategic advantage in that lawsuit.[6] And Moement takes issue with GrooMore's assertion that it has cleansed its operations of the use of Moement's trade secrets and intellectual property.

The Court held a hearing on the lift-stay motion on February 7, 2025. At that hearing, the Court suggested that the question whether the debtor had cleansed itself of any alleged violation of Moement's trade secrets and intellectual property was something of a gating issue. If so, the debtor was entitled to try to reorganize its business in bankruptcy. In that event, the questions about Moement's claim arising out of alleged prepetition violations could be dealt with later.

If not, however, the debtor should not be entitled to operate its business on a post-petition basis in violation of Moement's rights. And because that question had to be resolved by someone, the Court suggested that, in view of the fact that the District Court for the Central District of California had been presiding over that case for some time, it might make sense to lift the stay to allow that court to resolve this issue, so long as it could be done within a reasonable timeframe.[7] If that court were

---

[6] *Id.* at 23-25.

[7] Under 11 U.S.C. § 362(d)(1), a court may grant stay relief for "cause." That standard is commonly described as "flexible" and providing for a "case by case" assessment of the facts and circumstances. *See generally, In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992); *In re The SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007). In addition, there is at least a question whether a lawsuit seeking only an injunction against post-petition violations is even subject to the automatic stay. *See* 11 U.S.C. § 362(a). Because, for the reasons described below, this Court is inclined to grant stay relief even if the stay applies, there is no need to address that question further.

unable to address that dispute within a reasonable timeframe, however, the same issue could of course be resolved in an adversary proceeding in this Court.

The Moement litigation pending in the Central District of California is before Judge Wesley Hsu. At the February 7 hearing, the Court asked the parties if either party would object to the Court reaching out to Judge Hsu to puzzle through which court was in a better position to move forward to address the question whether GrooMore had cleansed itself of the alleged use of Moement's trade secrets and intellectual property. Both parties consented to that.

The undersigned judge spoke yesterday with Judge Hsu. Judge Hsu reported that he has familiarity with the case from having presided over it. He said that if this Court were to lift the stay to permit the case to proceed against the debtor solely for the purpose of determining Moement's entitlement to injunctive relief, he would be able to set the case for trial within a reasonable period of time. In light of that fact, this Court is inclined to grant Moement's motion for relief from stay, solely for the purpose of addressing the question of Moement's entitlement to injunctive relief.

The question of the damages (if any) owed to Moement by the debtor shall be reserved for the claims allowance process. Counsel for Moement suggested during the February 7 hearing that if the Court were to grant stay relief for this purpose, principles of judicial economy would counsel in favor of allowing the claim to be fully liquidated in the district court. The Court is inclined to deny that request. While it is not clear to the Court how much (if at all) the estate will benefit from not being required to litigate damages, to the extent that the debtor seeks to reserve that issue

*In re GrooMore Inc.*, No. 25-10018
February 12, 2025
Page 6 of 6

for the claims allowance process, the Court believes that the debtor is entitled to do so.

The Court is aware that the Moement litigation also involves claims against individuals. Those claims are not subject to the automatic stay.[8] As a matter of his own discretion, Judge Hsu stayed the claims against the individuals while awaiting a decision of this Court on Moement's motion for relief from stay. To the extent this Court lifts the stay to permit the case to proceed as to Moement, the question of whether and how to proceed to trial against the individuals (including the question whether that trial should include an assessment of damages, if any, against the individuals) is a matter left for Judge Hsu in the exercise of his discretion.

For the foregoing reasons, the Court is inclined to grant Moement's motion in part, providing that the automatic stay shall be lifted solely with respect to its claim for injunctive relief. If the parties believe that this letter ruling provides them with sufficient guidance, they are directed to settle a form of order so providing. To the extent that either party believes that a further status conference is necessary, the parties may reach out to chambers to schedule such a status conference.

                          Sincerely,

                          Craig T. Goldblatt
                          United States Bankruptcy Judge

---

[8] *See McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 509 (3d Cir. 1997) (stating that it is a well-established principle that the automatic stay generally only stays an action against a "debtor").